# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

BRITTANI GRIEBAHN (R87273),

      Petitioner,

        v.

MARGARITA MENDOZA, *Supervisor*,
*Fox Valley Adult Transition Center*,

      Respondent.

No. 23-cv-05134

Judge John F. Kness

## MEMORANDUM OPINION AND ORDER

Petitioner Brittani Griebahn, previously an Illinois Department of Corrections prisoner,[1] brings this habeas corpus petition under 28 U.S.C. § 2254 to challenge her 2017 Cook County convictions for possession of a controlled substance with intent to distribute and possession of a controlled substance. (Dkt. 1.) Petitioner contends that her appellate counsel rendered constitutionally-ineffective assistance in two ways:

---

[1] Petitioner filed this case while she was in the custody of the Illinois Department of Corrections serving a term of mandatory supervised release. As of the date of this opinion, however, Petitioner is no longer listed on the IDOC inmate locator webpage. That fact suggests Petitioner has completed her mandatory supervised release term and been discharged from the IDOC. Petitioner met the "in custody" habeas requirement when she filed this case, as she was in the custody of the IDOC on mandatory supervised release at that time. *Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (citing *Maleng v. Cook*, 490 U.S. 488, 490-91 (1989) (per curiam); *Carafas v. LaVallee*, 391 U.S. 234, 238 (1968)). Petitioner's completion of her sentence and release from the IDOC does not moot this present habeas corpus challenge. *Spencer*, 523 U.S. at 8 (federal courts must presume collateral consequences from a criminal conviction, such as impacting the right to vote, hold public office, serve on a jury, and engage in certain businesses). In view of these changed circumstances, Kwame Raoul, Attorney General of the State of Illinois, is substituted as Respondent in place of Margarita Mendoza. *Hogan v. Hanks*, 97 F.3d 189, 190 (7th Cir. 1996); Fed. R. Civ. P. 25(d)(4).

(1) by not arguing on direct appeal that trial counsel was ineffective for failing to move to suppress detection powder evidence under *United States v. Jones*, 565 U.S. 400 (2012); and (2) by failing to raise a Confrontation Clause claim regarding the admission of certain custodial statements Petitioner made to the police following her arrest. (Dkt. 1 at 7–8.) For the reasons that follow, the Court holds that, because Petitioner's claims are procedurally defaulted, the habeas corpus petition must be denied. And because Petitioner has not made a substantial showing of the denial of a constitutional right, the Court declines to issue a certificate of appealability.

## I. BACKGROUND

### A. Petitioner's Trial

Following a bench trial, Petitioner was found guilty of one count of possession of a controlled substance with intent to deliver and two counts of possession of a controlled substance. *Illinois v. Griebahn*, 2019 IL App (1st) 171693, ¶ 1 (the "Direct Appeal").[2] As the state court record reflects, Petitioner's convictions arose from the interception of drugs in a package at O'Hare International Airport addressed to Petitioner. *Id.* at ¶ 3. A drug dog alerted to a padded mailer transiting through

---

[2] All background facts are drawn from the state court record (Dkt. 6) as well as the state appellate court decision on direct appeal, *Illinois v. Griebahn*, 2019 IL App (1st) 171693 ("*Direct Appeal*"). Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), federal habeas review affords great deference to state court decisions (including their discussions of the facts). *See Hartsfield v. Dorethy*, 949 F.3d 307, 309 n.1 (7th Cir. 2020) (citing 28 U.S.C. § 2254(e)(1); *Perez-Gonzalez v. Lashbrook*, 904 F.3d 557, 562 (7th Cir. 2018)). State court factual findings, including the findings in state appellate court opinions, have a presumption of correctness. 28 U.S.C. § 2254(e)(1); *Tharpe v. Sellers*, 528 U.S. 33, 34 (2018) (per curiam). Petitioner does not challenge the facts and procedural history arising from the state court record before this Court; rather, Petitioner's only dispute is the legal significance of that information. As a result, the Court may rely upon this information at this initial stage. *Sanders v. Radtke*, 48 F.4th 502, 509 (7th Cir. 2022).

O'Hare. *Id.* at ¶ 4. A Customs agent opened the package discovering a DVD case. *Id.* Inside the DVD case was methylenedioxymethamphetamine ("MDMA"), a controlled substance commonly known as ecstasy. *Id.* The package was addressed to Petitioner at a residential apartment in Mount Prospect, Illinois. *Id.*[3]

Following the discovery of the drugs, the Mount Prospect Police Department and the United States Postal Inspection Service jointly continued the investigation. *Id.* at ¶¶ 5–6. A Mount Prospect police detective took custody of the package and obtained an anticipatory search warrant relating to both Petitioner and her apartment. *Id.* at ¶ 6. A court order was also issued allowing the police to place electronic devices inside the package. *Id.* A postal inspector was assigned to deliver the package in coordination with the Mount Prospect police. *Id.* Consistent with the court order, the inspector placed a light sensor and trip wire sensor in the package; those devices were designed to be activated when the package was opened and the DVD case removed. *Id.*

Dressed as a postal employee, the postal inspector attempted to deliver the package to Petitioner's apartment on July 22, 2015. *Id.* at ¶ 7. But when no one answered the door, the inspector left a postal re-delivery slip on the apartment door. *Id.* That slip requested the recipient to call the phone number listed for delivery of an international package. *Id.* About an hour later, Petitioner, identifying herself by name, called the inspector and asked whether the package could be left without

---

[3] The return label listed Julia Klein as sending the package from Dusseldorf, Germany. *Id.* Further investigation determined that Klein was the sister of Petitioner's boyfriend, Marek Mikolajczyk. *Id.* at ¶¶ 10, 15–16.

someone having to sign for it. *Id.* After the inspector told Petitioner this was not possible, they mutually arranged for a redelivery attempt the next day during a one-hour window. *Id.*

Before attempting redelivery the next day, the inspector, preparing for the attempt while at the Mount Prospect Police Department, added theft detection powder to the package. *Id.* at ¶ 8. After dusting powder onto and inside the DVD case, the inspector resealed the package and checked its exterior with ultraviolet light to ensure that no detection powder was present. *Id.*

At around noon, the postal inspector and a Mount Prospect detective arrived at Petitioner's apartment building in a postal vehicle. *Id.* at ¶ 9. They waited until approximately 12:55 p.m. before attempting to deliver the package to ensure that no additional people were coming or going. *Id.* Dressed again as a postal worker, the inspector knocked on Petitioner's apartment door; the detective remained in the postal vehicle. *Id.* at ¶ 10. Petitioner's boyfriend answered the door, and when the inspector asked whether the boyfriend was expecting an international package, the boyfriend said yes. *Id.* After some discussion concerning the delivery slip from the previous day, the inspector left the subject package with the boyfriend. *Id.*

After returning to the postal vehicle, the postal inspector waited with the detective for three to four minutes before receiving a notification that the electronic sensors in the package had been activated. *Id.* at ¶ 11. A group of Mount Prospect police officers then executed the anticipatory search warrant and entered the apartment. *Id.* at ¶ 13. At the same time the search warrant was executed, two other

Mount Prospect police officers were stationed behind Petitioner's apartment building. *Id.* at ¶ 12. One of the officers testified that, at the time of the search, he observed a window screen fly out of a second-floor window and then a small package came out from the window. *Id.* That officer recovered the package on the ground and saw that it was a DVD case that appeared to have drugs inside it. *Id.*

Inside the apartment, officers found Petitioner and her boyfriend in a bedroom lying on a bed. *Id.* at ¶ 13. The window above the bed was open, the window screen was missing, and the blinds were hanging unevenly appearing to be damaged. *Id.* Officers were able to look out the window to see the window screen and DVD case lying on the ground below. *Id.*

During the search of Petitioner's apartment, officers found a plastic bag containing six yellow and two orange pills underneath the kitchen sink, *id.* at ¶ 14; they also found clear, empty capsules, a digital scale, a cannabis grinder, and pipes commonly used to smoke cannabis in a kitchen cabinet. *Id.* The mail package that had previously contained the DVD case and the re-delivery slip left by the postal inspector the prior day were both on the kitchen counter. *Id.*

Separately, while in the apartment following the search, the postal inspector examined both Petitioner and her boyfriend's hands with ultraviolet light and found a large amount of substance that appeared to be consistent with the theft detection powder on Petitioner's hands. *Id.* at ¶ 11. Three "very small specks" of powder were present on the boyfriend's hands. *Id.*

Petitioner was arrested and taken to the Mount Prospect police station. *Id.* at

¶ 15. During an interrogation, Petitioner said that the package was not meant for anyone else and that her boyfriend should not be arrested. *Id.* Based in part on that statement, the police released the boyfriend without any charges. *Id.* Forensic testing later determined that the drugs in the DVD were MDMA, and the drugs recovered in the clear bag in the apartment were alprazolam (known by the brand name of Xanax). *Id.* at ¶ 17.

Petitioner was charged in state court with one count of possession of a controlled substance with intent to deliver and two counts of possession of a controlled substance. *Id.* at ¶ 1. Before trial, Petitioner filed a motion to suppress the physical evidence under the Fourth Amendment, as well as Petitioner's statements to police. *Id.* at ¶ 52. Petitioner argued that her arrest lacked a warrant or probable cause and that the seized drugs were possessed by someone other than Petitioner, but the trial judge denied the motion. *Id.* After a bench trial, the state court found Petitioner guilty and sentenced her to concurrent terms of 20 and 6 years of imprisonment. *Id.* ¶ 1.

## B.    Petitioner's Direct Appeal

Acting through new counsel, Petitioner pursued a direct appeal of her conviction and sentence. (Dkt. 1 at 14.) Petitioner argued that the State failed to prove beyond a reasonable doubt that she constructively possessed the package or the controlled substances. *Direct Appeal*, 2019 IL App (1st) 171693 at ¶ 24; (Dkt. 1 at 3.) Petitioner also argued that her trial counsel was constitutionally ineffective for failing to challenge the validity of the anticipatory search warrant.[4] *Id*. at ¶ 40; (Dkt.

_____

[4] Petitioner was required to raise these ineffective assistance of counsel arguments on direct appeal because, in Illinois state courts, defendants "are required to raise ineffective

1, pg. 3.) In Petitioner's view, the anticipatory search warrant did not explicitly give police authorization to insert the theft detection powder into the package. (*Id.*) This was the only ineffective assistance of counsel argument raised on direct appeal. (Dkt. 1, pg. 3.)

A panel of the state appellate court affirmed and rejected both arguments presented by Petitioner. *Direct Appeal*, 2019 IL App (1st) 171693, ¶¶ 23–57. Petitioner then filed, through her third (and current) attorney, a petition for leave to appeal (PLA) to the Supreme Court of Illinois. (Dkt. 6 at 10–32; Dkt. 1 at 14.) Petitioner's filing before the highest court of Illinois raised new arguments not presented either in the trial court or before the intermediate appellate court on direct appeal: (1) the "unopened package" doctrine demonstrated that the prosecution failed to prove Petitioner guilty beyond a reasonable doubt; (2) the warrantless insertion of the theft detection powder in the DVD package resulted in an unlawful trespass in violation of Petitioner's Fourth Amendment rights under *United States v. Jones*, 565 U.S. 400 (2012); and (3) the trial court erred in allowing the introduction at trial of testimony from a police detective regarding Petitioner's confession and then improperly limited Petitioner's ability to cross-examine the detective at trial. (Dkt. 1

---

assistance of counsel claims on direct appeal if apparent on the record." *Illinois v. Veach*, 89 N.E.3d 366, 375 (Ill. 2017); *see also Crutchfield v. Dennison*, 910 F.3d 968, 976 (7th Cir. 2018). If an ineffective assistance of counsel argument could have been raised on direct appeal but was not, Illinois law considers it forfeited in a later postconviction proceeding. *Crutchfield*, 910 F.3d at 976 (7th Cir. 2018); *Veach*, 89 N.E.2d at 375. Illinois courts must apply a "case-by-case" analysis to determine whether the ineffective assistance of counsel argument must be brought on direct appeal or postconviction. *Veach*, 89 N.E.3d at 376. This rule differs from the standard that applies to federal criminal defendants, who are warned not to raise ineffective assistance of counsel arguments on direct appeal. *Massaro v. United States*, 538 U.S. 500, 504–05 (2003); *United States v. Cates*, 950 F.3d 453, 457 (7th Cir. 2020).

at 4; Dkt. 6 at 10–32.) Of critical relevance here, Petitioner did not raise a Sixth Amendment ineffective assistance of counsel claim. Petitioner's PLA, however, was denied by the Supreme Court of Illinois. *See generally Illinois v. Griebahn*, 135 N.E.3d 561 (Ill. 2019) (Table). Petitioner did not seek a writ of certiorari from the Supreme Court of the United States. (Dkt. 1 at 4.)

### C. Postconviction Proceedings

In her Illinois postconviction proceedings, Petitioner, acting again through counsel, filed a petition in which she (1) cited an alleged Fourth Amendment violation (under *Jones*) based on the placement of theft detection powder in the DVD package; (2) contended that there was insufficient evidence to support her conviction under the unopened package doctrine; (3) accused her trial counsel of rendering ineffective assistance at trial by failing to: (a) move to suppress the introduction of evidence related to the theft detection powder issue under the Fourth Amendment, (b) raise the unopened package exception argument, (c) challenge the admission of the police detective's testimony regarding Petitioner's confession, and (d) challenge the inadmissibility of Petitioner's statement that her boyfriend should not be arrested; (4) accused her appellate counsel of rendering ineffective assistance on appeal by failing to raise: (a) the unopened package doctrine issue; (b) the Fourth Amendment claim regarding the theft detection powder; and (c) a Confrontation Clause challenge regarding the admission of testimony from the police detective who questioned Petitioner during her confession and the trial court's having limited her ability to raise her boyfriend as an alternative suspect. (Dkt. 1 at 4; Dkt. 6-2 at 67–119); *Illinois*

8

*v. Griebahn*, 2023 IL App (1st) 220299, ¶ 21 ("*Post Conviction Appeal*"). On the state's motion, the state trial court dismissed the petition (*id.* at ¶ 24), and Petitioner appealed.

On appeal of the denial of her postconviction petition, Petitioner, through counsel, raised: (1) the Fourth Amendment claim regarding the use of the detection powder under *Jones*; (2) ineffective assistance of trial counsel for failing to raise the Fourth Amendment *Jones* issue; and (3) ineffective assistance of appellate counsel for failing to raise (a) the Fourth Amendment *Jones* issue, and (b) the Confrontation Clause issue regarding the police detective testimony and her boyfriend as a potential alternative suspect on direct appeal. (Dkt. 1 at 5); *Post Conviction Appeal*, 2023 IL App 220299, at ¶ 27. Affirming the trial court's dismissal of the state postconviction petition, the state appellate court held that Petitioner's Fourth Amendment and ineffective assistance of trial counsel arguments were barred by forfeiture as the claims were, or could have been, raised on direct appeal. *Id.* at ¶ 31. That left only the ineffective assistance of appellate counsel arguments, which the state appellate court rejected on the merits. *Id.* at ¶¶ 32–49. Petitioner did not file a PLA in her postconviction proceedings, explaining in her present federal habeas corpus petition that "no PLA filed [because the] issue is federal." (Dkt. 1 at 6.)

### D. Federal Habeas Petition

Petitioner now seeks a federal writ of habeas corpus. (Dkt. 1.) Petitioner contends that her appellate counsel rendered constitutionally-ineffective assistance in two ways: (1) by not arguing on direct appeal that trial counsel was ineffective for

failing to move to suppress the detection powder evidence under *Jones*; and (2) by failing to raise the Confrontation Clause claim regarding Petitioner's confession to the police and her statement that her boyfriend should not be arrested. (Dkt. 1 at 7–8.) On initial review of the habeas corpus petition under Rule 4, the Court instructed Petitioner to show cause why this case should not be dismissed as procedurally defaulted. (Dkt. 4.) Petitioner's response contends that her claims are not procedurally defaulted. (Dkt. 6.)

## II.    DISCUSSION

### A.    Petitioners Claims are Procedurally Defaulted

Federal habeas corpus relief is available only to persons who can establish that their incarceration violates the Constitution, laws, or treaties of the United States. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); 28 U.S.C. § 2254(a). State prisoners "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process" either on direct appeal or in postconviction proceedings. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *see also Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004). In Illinois, this requirement includes presenting the claims in a PLA to the Supreme Court of Illinois. *Snow v. Pfister*, 880 F.3d 857, 864 (7th Cir. 2018) (citing *Boerckel*, 526 U.S. at 845–46). If the "federal issue was not fairly presented to the state courts and those courts would now hold the claim procedurally barred, the procedural default doctrine precludes" federal habeas corpus review. *Thomas v. Williams*, 822 F.3d 378, 384 (7th Cir. 2016) (cleaned up).

Petitioner raised her ineffective assistance of appellate counsel arguments in her postconviction petition before the state trial court and in her postconviction appeal before the state appellate court. (Dkt. 1 at 4; Dkt. 6-2 at 67–119.) Petitioner did not, however, bring a PLA in her postconviction proceedings. To exhaust a claim, the prisoner must litigate the claim through "one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845. This requirement may be completed during either direct appellate or postconviction proceedings, but the prisoner must present the claim to each and every level of the state court review during one distinct round of state court review. *Wilson v. Cromwell*, 69 F.4th 410, 420 (7th Cir. 2023). Petitioner failed to meet this requirement.

Petitioner asserts that she submitted a PLA on direct appeal raising these issues. (Dkt. 6 at 6.) Petitioner argues that she provided the *underlying* claims of the Fourth Amendment *Jones* issue and the Sixth Amendment Confrontation Clause issue in her PLA from the direct intermediate appeal, and then "simply reframed the substance of the constitutional violations" as ineffective assistance of appellate counsel arguments in the postconviction petition. (*Id.*) Petitioner's position appears to be that exhausting an underlying substantive claim suffices as well for a derivative claim of ineffective assistance of counsel. Put another way, Petitioner contends that her PLA from the direct intermediate appeal, along with the postconviction petition and postconviction appeal before the intermediate state appellate court, satisfied the exhaustion requirement.

11

Petitioner's blended-exhaustion argument fails. To exhaust a claim, a prisoner must first present to the state courts her legal arguments, fully formed and complete, before she can present those same arguments in a later federal habeas corpus petition. *Anderson v. Benik*, 471 F.3d 811, 814 (7th Cir. 2006) (cleaned up). This prerequisite demands that the prisoner put the "operative facts and controlling law" before the state courts so that those tribunals are given a "meaningful opportunity" to resolve the claim. *Id.* It is not enough that the claims are merely related. *Stevens v. McBride*, 489 F.3d 883, 894 (7th Cir. 2007).

As the record of this case reflects, Petitioner raised different claims, with different legal standards, in her direct appeal proceedings than she did in her later postconviction proceedings. Claim One in this case, ineffective assistance of counsel for failing to challenge the anticipatory search, was first raised before the state appellate court on direct appeal. *Direct Appeal*, 2019 IL App (1st) 171693 at ¶ 40; (Dkt. 1, pg. 3.). Petitioner did not, however, complete one full round of state court review on direct appeal because her PLA raised the substantive Fourth Amendment claim instead of the ineffective assistance of counsel claim. (Dkt. 1 at 4; Dkt. 6 at 10–32.) During her postconviction proceedings, Petitioner again failed to complete one full round of state court review on her ineffective assistance of counsel argument because she did not file a PLA.

Claim Two in this case, the Confrontation Clause claim, was not raised before the state appellate court on direct appeal. *Direct Appeal*, 2019 IL App (1st) 171693; (Dkt. 1, pg. 3.) It was instead raised in the postconviction petition (Dkt. 1 at 4; Dkt.

6-2 at 67–119); *Post Conviction Appeal*, 2023 IL App (1st) 220299, ¶ 21, and postconviction appeal before the state appellate court. (Dkt. 1 at 5); *Post Conviction Appeal*, 2023 IL App 220299, at ¶ 27. But, again, because Petitioner filed no postconviction PLA, she failed to complete the one full round of state court review necessary for exhaustion of Claim Two.

At bottom, it appears Petitioner (incorrectly) views the ineffective assistance of counsel doctrine as a way to "reformulate" an earlier underlying substantive claim. In the memorandum of law she filed in this case, Petitioner raised a Fourth Amendment *Jones* argument without any reference to the ineffective assistance of counsel argument that she raised in her petition. (Dkt. 1 at 9–15.) But Petitioner did not raise a freestanding Fourth Amendment claim in her habeas corpus petition; any such claim is therefore not properly before the Court. *See* Rule 2(c)(1) of the Rules Governing Section 2254 Cases in the United States District Courts ("The petition must specify all the grounds for relief available to the petitioner."). What *is* before the Court is Petitioner's claim that she received constitutionally-ineffective assistance of counsel—an argument that, as explained above, Petitioner failed to exhaust before the state courts.[5]

---

[5] To the extent Petitioner contends substantively (that is, without relying on an ineffective assistance of counsel theory) that the theft-detection powder should have been suppressed under the Fourth Amendment, the argument fails to account for *Stone v. Powell*, where the Supreme Court held that a claim of state-court error in failing to apply the exclusionary rule cannot justify federal habeas relief. 428 U.S. 465, 490 (1976). And although *Kimmelman v. Morrison*, 477 U.S. 365 (1986), might otherwise allow an ineffective assistance of counsel argument regarding counsel's deficient performance on a Fourth Amendment issue, *Kimmelman* does not account for the procedural default of Petitioner's ineffective assistance of counsel argument.

### B.     Petitioner Cannot Excuse the Procedural Default

To be sure, procedural default as a barrier to habeas relief is subject to two potential exceptions: (1) cause for the default coupled with actual prejudice; and (2) a showing that "failure to consider the claims will result in a fundamental miscarriage of justice," which typically requires establishing actual innocence. *Thomas*, 822 F.3d at 386 (quoting *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)) (cleaned up). Petitioner, however, has addressed neither cause and prejudice or fundamental miscarriage of justice to excuse any default. Petitioner has thus forfeited any argument to show cause and prejudice or the existence of a fundamental miscarriage of justice based on her failure to exhaust. *See Crockett v. Hulick*, 542 F.3d 1183, 1193 (7th Cir. 2008).

To the extent Petitioner has not forfeited the ability to rely upon the cause and prejudice or fundamental miscarriage of justice exceptions, application of either doctrine fails on the merits. As to cause and prejudice, cause is an " 'objective factor, external to [Petitioner] that impeded [her] efforts to raise the claim in an earlier proceeding.' " *Weddington v. Zatecky*, 721 F.3d 456, 465 (7th Cir. 2013) (quoting *Smith v. McKee*, 596 F.3d 374, 382 (7th Cir. 2010)). Examples of cause include: (1) interference by officials making compliance impractical; (2) that the factual or legal basis was not reasonably available to counsel; or (3) ineffective assistance of counsel. *Guest v. McCann*, 474 F.3d 926, 930 (7th Cir. 2007) (citing *McCleskey v. Zant*, 499 U.S. 467 (1991)).

Neither of the first two grounds for cause is at issue here. Petitioner's only ground for cause and prejudice, therefore, would be an ineffective assistance claim. But to constitute "cause" that excuses the default, the ineffectiveness claim itself must have been presented to each level of state-court review. *See Edwards v. Carpenter,* 529 U.S. 446, 451–52 (2000); *see also Smith v. Gaetz*, 565 F.3d 346, 352 (7th Cir. 2009). Petitioner did not do so, and this procedural default is a result of Petitioner's decision to forego a PLA on postconviction review. *See Martinez v. Ryan*, 566 U.S. 1, 17 (2012) ("[Section] 2254(i) precludes [a habeas petitioner] from relying on the ineffectiveness of [her] postconviction attorney as a ground for relief." (internal quotation marks omitted); *Johnson v. McBride*, 381 F.3d 587, 590 (7th Cir. 2004) ("Once trial and direct appeals have run their course . . . [,] neither the sixth amendment nor federal law guarantees effective assistance of counsel for collateral proceedings."). Nor can any errors attributable to postconviction counsel establish cause to excuse the default, as there is no "constitutional right to counsel in state postconviction proceedings." *Davila v. Davis*, 582 U.S. 521, 524 (2017). Petitioner has thus not shown "cause for the default and actual prejudice," meaning that she fails to qualify for the first exception to procedural default.

Petitioner cannot establish cause and prejudice as a basis to excuse her procedural default, leaving the fundamental miscarriage of justice (actual innocence) gateway as the sole remaining potential basis for relief. As the Supreme Court has explained, "tenable actual-innocence gateway pleas are rare." *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). A petitioner must persuade the district court that, in the

light "of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 329 (1995). This standard is demanding; review is permitted "only in the 'extraordinary' case." *House v. Bell*, 547 U.S. 518, 538 (2006) (quoting *Schlup*, 513 U.S. at 327). To demonstrate innocence "so convincingly that no reasonable jury could convict," a prisoner must possess "documentary, biological (DNA) or other powerful evidence: perhaps some non-relative who placed [her] out of the city, with credit card slips, photographs, and phone logs to back up the claim." *Hayes v. Battaglia*, 403 F.3d 935, 938 (7th Cir. 2005).

Nothing in this record suggests that Petitioner is actually innocent. As explained above, the intercepted drugs were addressed to Petitioner's home. Petitioner contacted the postal service about the delivery when a delivery slip was left on her door after the first attempt to deliver and planned for their delivery. Drugs and drug distribution materials (including a digital scale) were found in Petitioner's home. Perhaps most significantly, Petitioner confessed to the police following her arrest. This evidence is conclusive and establishes that Petitioner cannot rely on the fundamental miscarriage of justice exception to excuse her procedural default. Petitioner's claims are thus procedurally defaulted.

Even if Petitioner could show that her habeas corpus petition is not procedurally defaulted, however, Petitioner's claims would fail on the merits following a review under Rule 4. Because the state appellate court's decision in the postconviction proceedings, *Post Conviction Appeal*, 2023 IL App (1st) 220299, at ¶¶ 34–49, is the last reasoned decision from the state court on the merits of Petitioner's

claims, the Court considers only that decision. *See Harris v. Thompson*, 698 F.3d 609, 623 (7th Cir. 2012) (citing *Greene v. Fisher*, 565 U.S. 34, 40 (2011)); *see also Garth v. Davis*, 470 F.3d 702, 710 (7th Cir. 2006). And as the state court adjudicated Petitioner's claim on the merits, this Court applies the deferential standard set forth by AEDPA. *Greene*, 565 U.S. at 35. In its ruling, the state court correctly identified the controlling standard of *Strickland v. Washington*, 466 U.S. 688 (1984), as applying to Petitioner's ineffective assistance of counsel arguments. *Post Conviction Appeal*, 2023 IL App (1st) 220299, at ¶ 34. Petitioner thus cannot demonstrate the state court decision is "contrary to" *Strickland*.

Petitioner also cannot show the state court's rejection of her arguments constituted an unreasonable application of *Strickland*. *See Williams v. Lemmon*, 557 F.3d 534, 538 (7th Cir. 2009). Petitioner fails to demonstrate prejudice from any alleged deficient performance by counsel, given that the evidence of her guilt is overwhelming. As explained in detail above, the illegal drugs were mailed to Petitioner's home; Petitioner arranged for the delivery of the package with the drugs to her home when calling about the missed delivery; Petitioner made sure to be home at the time of the delivery; and Petitioner was the only person living in her home (her boyfriend lived in a different apartment). That the DVD package was thrown out of the window at the time the police executed the search warrant demonstrates knowledge that the package contained drugs, and other drugs and drug trafficking paraphernalia were recovered from Petitioner's home. All of this evidence shows that—procedural default aside—Petitioner's habeas petition fails on the merits.

17

For all of these reasons, Petitioner is not entitled to habeas corpus relief on any of the claims she brought under 28 U.S.C. § 2254. Accordingly, the habeas corpus petition is denied.

No certificate of appealability is warranted. A certificate of appealability "may not issue 'unless the applicant has made a substantial showing of the denial of a constitutional right'" or error in the Court's procedural determinations. *Slack v. McDaniel*, 529 U.S. 473, 483 (2000) (quoting 28 U.S.C. § 2253(c)). In the Court's view, Petitioner has failed to make this showing.

## III.   CONCLUSION

Petitioner's habeas corpus petition is denied. The Court declines to issue a certificate of appealability.

SO ORDERED in No. 23-cv-05134.

Date: July 19, 2024

_____

JOHN F. KNESS
United States District Judge

18